Kurt David Hermansen, OSB 264974
Assistant Federal Public Defender
859 Willamette Street, Suite 200
Eugene, Oregon 97401
(541) 465-6937 Fax: (541) 465-6975
kurt_hermansen@fd.org

Attorney for Defendant

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NATHAN HAYES,<br><br>Defendant. | Case No. **6:26-mj-00289**<br><br>MEMORANDUM IN SUPPORT TO RELEASE DEFENDANT TO SECURE HOUSING WITHOUT ACCESS TO THE INTERNET |

The defendant, Nathan Hayes, through counsel Kurt Hermansen, respectfully moves this Court to authorize his release to safe, controlled housing for at-risk youth, in the countryside west of Eugene near the small community of Crow. The government has opposed release based on alleged danger to the community but not based on risk of flight.

## TABLE OF CONTENTS


I. WHAT WENT WRONG? .... 3

II. VENUE IN OHIO OR OREGON? .... 3

III. 5/21 THROUGH 6/18 "GRANDPARENTS" HOUSING .... 7

IV. LIVE GROW SHARE & RESTWELL TWO WEEK WAIT .... 8

V. EUGENE MISSION 6/18 through 7/1 housing .... 8

VI. 7/1 THROUGH 10/22 RESTWELL PLACEMENT FOR HOUSING, TREATMENT, RECOVERY, AND STABILITY .... 9

VII. PRETRIAL WARRANT .... 9

VIII. PRETRIAL COMPLIANCE & NON-COMPLIANCE ALLEGATIONs .... 10

IX. INTERNET BAN AND PRETRIAL RELEASE TO RESTWELL WILL REASONABLY ASSURE COMMUNITY SAFETY IN SHORT- AND LONG-TERM BETTER THAN JAIL .... 12

X. REOPENING THE RELEASE HEARING .... 12

XI. THE FOLLOWING FACTORS DEMONSTRATE THAT CONDITIONS EXIST WITH A RESTWELL PLACEMENT TO REASONABLY ASSURE SAFETY .... 13

XII. RETURN TO LIVE GROW SHARE (LGS) AND RESTWELL .... 14

XIII. WRAP AROUND SERVICES .... 14

XIV. NATHAN HAD BEEN THRIVING AT RESTWELL .... 15

XV. WHAT IS THE SOLUTION? .... 16

## I. WHAT WENT WRONG?

1. Giving Nathan a cell phone was like giving an alcoholic a beer.
2. While Nathan's emotional intelligence is that of a 12-year-old child, he's intellectually smart.
    1. So, being told he can't do legal searches did not compute.
    2. The searches he did on the cell phone were not illegal.[1]
    3. Playing violent video games is not illegal and was not prohibited by his release conditions.

## II. VENUE IN OHIO OR OREGON?

Nathan's attorney in Ohio filed a motion to dismiss for improper venue, which if granted could result in the case being charged in Oregon. Or a Rule 20 transfer could be considered as an option. The Ohio docket appears below:

[1] Mods are something created for video games (like outfitting a character with weapons or other images).

| Date | # | Docket Text 3:26-cr-00264-JJH-1 |
|---|---|---|
| 10/16/2026 | | **Order to Continue - Ends of Justice** [non-document] as to Nathan Hayes (1). The Pretrial Conference set for 11/18/2026 is VACATED. Government's response to Defendant's 15 Motion to Dismiss is due 11/23/2026; Defendant's reply is due 12/7/2026. Time excluded from 10/16/2026 through the briefing schedule and to allow a reasonable amount of time to rule or hold an evidentiary hearing. The Court finds … time is excluded from the Speedy Trial Act pursuant to 18 USC §3161(h). Judge Jeffrey J. Helmick on 10/16/2026. (V,S) (Entered: 10/16/2026) |
| 10/06/2026 | 15 | **Motion** to Dismiss *for Improper Venue* by Nathan Hayes (1). (Cahoon, Claire) (Entered: 10/06/2026) |
| 10/05/2026 | 14 | Notice of Appearance of Attorney - Krysten E. Beech appearing for Nathan Hayes (1) *as co-counsel* (Beech, Krysten) (Entered: 10/05/2026) |
| 09/24/2026 | | Notice [non-document] as to Nathan Hayes (1). The Pretrial Conference set for 11/18/2026 will now begin at 04:00 PM (change in time only) via the Court's bridge line 419-718-0655, Meeting ID 849 763 788 before Judge Jeffrey J. Helmick. (V,S) (Entered: 09/24/2026) |
| 08/06/2026 | 12 | **Motion** for Deadlines by Nathan Hayes (1). (Cahoon, Claire) (Entered: 08/06/2026) |
| 07/27/2026 | | **Minute Order of Telephone Pretrial Conference** [non-document] as to Nathan Hayes (1) on 7/27/2026. Government attended by attorney Dexter Phillips; Assistant Federal Public Defender Claire Cahoon for Defendant. Case status reported. Further Pretrial Conference set for 11/18/2026 at 1:30 PM via the Court's bridge line: 419-718-0655; Meeting ID 849 763 788. Time excluded from 7/28/2026 until 11/18/2026 for defense review of discovery and investigation. The Court finds that the ends of justice served by granting this time outweigh the best interest of the public and the defendant in obtaining a speedy trial such that the time is excluded from the Speedy Trial Act pursuant to 18 USC §3161(h). Judge Jeffrey J. Helmick on 7/27/2026. Time: 5 minutes. (V,S) (Entered: 07/27/2026) |

| Date | # | Docket Text 3:26-cr-00264-JJH-1 |
|---|---|---|
| 07/21/2026 | 11 | **Protective Order** as to Nathan Hayes (1). Related document: 10 . Judge Jeffrey J. Helmick on 7/21/2026. (V,S) (Entered: 07/21/2026) |
| 07/20/2026 | 10 | **Motion** for Protective Order by United States of America as to Nathan Hayes (1). (Attachments: # 1 Proposed Order)(Phillips, Dexter) (Entered: 07/20/2026) |
| 06/24/2026 | 9 | Notice of Discovery Request as to Nathan Hayes (1) (Cahoon, Claire) (Entered: 06/24/2026) |
| 06/12/2026 | 8 | Amended **Order** Setting Conditions of Release as to Nathan Hayes (1). Magistrate Judge Darrell A. Clay on 6/12/2026. (R,Ke) (Entered: 06/12/2026) |
| 06/12/2026 | 7 | Appearance Bond Entered as to Nathan Hayes (1) in amount of $ 10,000.00, unsecured. (R,Ke) (Entered: 06/12/2026) |
| 06/12/2026 | | **Order** to Continue - Ends of Justice [non-document] as to Nathan Hayes (1). Time excluded from 6/13/2026 until 7/27/2026. The Court finds that the ends of justice served by granting this time outweigh the best interest of the public and the defendant in obtaining a speedy trial such that the time is excluded from the Speedy Trial Act pursuant to 18 USC§3161(h). Magistrate Judge Darrell A. Clay on 6/12/2026. (R,Ke) (Entered: 06/12/2026) |
| 06/12/2026 | | **Order** [non-document] as to Nathan Hayes (1). Pursuant to the Due Process Protections Act, Government's counsel is advised of and ordered to comply with the government's disclosure requirements under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny; and reminded that failure to comply with those disclosure obligations in timely manner could result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, or sanctions by the Court. Magistrate Judge Darrell A. Clay on 6/12/2026. (R,Ke) (Entered: 06/12/2026) |

| Date | # | Docket Text 3:26-cr-00264-JJH-1 |
|---|---|---|
| 06/12/2026 | | **Order** [non-document] Appointing Federal Public Defender Claire R. Cahoon for Nathan Hayes. The Federal Public Defender must report to the Court any significant changes in defendant's employment or financial circumstances sufficient to enable defendant to pay, in whole or in part, for legal representation. Magistrate Judge Darrell A. Clay on 6/12/2026. (R,Ke) (Entered: 06/12/2026) |
| 06/12/2026 | 6 | CJA 23 Financial Affidavit by Nathan Hayes (1). Magistrate Judge Darrell A. Clay on 6/12/2026. (R,Ke) (Entered: 06/12/2026) |
| 06/12/2026 | | **Minutes of proceedings** [non-document] before Magistrate Judge Darrell A. Clay. Arraignment as to Nathan Hayes (1) Counts 1-6 held on 6/12/2026. Government appeared by AUSA Dexter Phillips; Defendant appeared with Federal Public Defenders Claire Cahoon, Tonya Carr, and Kurt Hermansen, District of Oregon; Officer Tia Lang appeared for U.S. Pretrial Services. All parties consented to appear via audio/video conference. Charges read. Parties advised of the Due Process Protections Act. Defendant waived reading of indictment and NOT GUILTY plea entered as to counts 1-6. Telephone Pretrial Conference set for 7/27/2026 at 11:00 AM via the Court's conference line at 419-718-0655, Meeting ID 849 763 788 before Judge Jeffrey J. Helmick. Time excluded. Bond continued with amended conditions. (Court Reporter ECRO B. Mansour) Time: 30 minutes. (R,Ke) (Entered: 06/12/2026) |
| 06/03/2026 | | Scheduling **Order** [non-document] as to Nathan Hayes (1). Arraignment set for 6/12/2026 at 02:30 PM to be held by video conference. Video conference access information will be provided in advance. Magistrate Judge Darrell A. Clay on 6/3/2026. (R,Ke) (Entered: 06/03/2026) |
| 06/03/2026 | | Random Assignment of Magistrate Judge pursuant to Local Criminal Rule 57.9. In the event of a referral, case will be assigned to Magistrate Judge Darrell A. Clay. (R,EM) (Entered: 06/03/2026) |
| 06/03/2026 | 4 | **Indictment** filed by USA as to Nathan Hayes (1) count(s) 1-6. (Attachments: # 1 Designation Form, # 2 Foreperson signature page) (R,EM) (Entered: 06/03/2026) |

| Date | # | Docket Text 3:26-cr-00264-JJH-1 |
|---|---|---|
| 05/22/2026 | | Scheduling **Order** [non-document] as to Nathan Hayes (1). Initial Appearance set for 6/12/2026 at 02:30 PM to be held by video conference. Video conference access information will be provided to all participants in advance. Magistrate Judge Darrell A. Clay on 5/22/2026. (R,Ke) Modified date and time on 5/22/2026 (R,Ke). [3:26-mj-05232-DAC] (Entered: 05/22/2026) |
| 05/21/2026 | 3 | Rule 5(c)(3) Documents Received as to Nathan Hayes (1). (Attachments: # 1 Complaint and Affidavit, # 2 Waiver of Rule 5 & 5.1, # 3 Order requiring a defendant to appear in the district where charges are pending)(M,Do) [3:26-mj-05232-DAC] (Entered: 05/22/2026) |
| 05/21/2026 | | Arrest of Nathan Hayes (1) in District of Oregon (Eugene (6)). (M,Do) [3:26-mj-05232-DAC] (Entered: 05/22/2026) |
| 05/21/2026 | 1 | **Complaint** signed by Magistrate Judge Darrell A. Clay on 5/21/2026 filed by USA as to Nathan Hayes (1). (Attachments: # 1 Affidavit) (R,Ke) [3:26-mj-05232-DAC] (Entered: 05/21/2026) |

On May 21, 2026, Nathan Hayes, who is eighteen-years old but looks like a 100-pound, sixteen-year-old teenager, appeared here in court on a Rule 5 transfer to Ohio. At that hearing the government argued for detention but the Court found that a combination of conditions existed that warranted releasing Nathan to his grandparents.

## III. 5/21 THROUGH 6/18 "GRANDPARENTS" HOUSING

Nathan was released to live with grandparents, but that household was not a supportive and loving environment. Notably, FPD staff noticed that the grandparents appeared self-indulgent, cold, and detached. Moreover, Nathan is not a blood relative of his grandparents. Nathan is the biological child of his

grandparents' ex-daughter-in-law. Per Nathan's report and FPD staff observations, Nathan's grandparents hardly treated him like family.

After fifteen days of providing Nathan with a stressful, unproductive, cluttered place to live, Nathan's grandmother contacted FPD and Pretrial to report she and her husband thought it would be best for Nathan to find somewhere else to live, citing the remoteness of their place in Veneta as the primary reason.

## IV. LIVE GROW SHARE & RESTWELL TWO WEEK WAIT

FPD Staff reached out to **Live Grow Share** (LGS) and learned about Restwell. FPD Staff worked with LGS, with Nathan's active involvement, to complete the application process, which included two interviews with different LGS staffers.

On June 18, 2026, FPD learned that LGS was accepting Nathan at Restwell, but there would be a two-week wait for bedspace.

## V. EUGENE MISSION 6/18 THROUGH 7/1 HOUSING

FPD Staff asked Nathan's grandmother if he could stay with her in Veneta for two more weeks. Nathan's grandparents refused that request, telling FPD Staff they were upset Nathan did not want to go to car shows and car club meetings with them.

FPD Staff had been communicating with the Eugene Mission as a contingency if LGS placement did not materialize. The Mission was,

essentially, the only place for Nathan to go since his spot at Restwell was not ready and his grandparents would not give him a roof over his head for two more weeks. Nathan's grandmother told FPD Staff that she would bring Nathan to the Mission, but not before he moved some metal from one spot to another in the yard.

Nathan moved into the Eugene Mission's Rescue Shelter on June 18, 2026. He lived there until July 1, 2026, when FPD Staff brought him to Restwell for his move-in. While at the Mission, Nathan handled the situation and himself better than many grown men whom the Court allows to live at the Mission.

## VI. 7/1 THROUGH 10/22 RESTWELL PLACEMENT FOR HOUSING, TREATMENT, RECOVERY, AND STABILITY

From July 1, 2026, until his arrest on October 22, 2026, Nathan became a model citizen at Restwell. He made amazing progress from his starting point and progressed on the road to recovery up until the day of his arrest on the pretrial violation warrant. LGS staff and other Restwell residents (and animals) welcome Nathan back.

## VII. PRETRIAL WARRANT

FPD's understanding is that Pretrial Services Officer Jeffrey Cox had no problems or concerns with Nathan, excepting the alleged violations now before

the court, other than Nathan forgetting to call Pretrial from the Restwell landline some of the three days per week that it was required.

Per the PTRV reports, Pretrial had concerns about some things Nathan was doing on the internet in mid-September. Officer Cox spoke with Nathan over the intervening weeks about concerns raised by the searches.

The tragic school shooting in Bend happened on October 15, 2026. The next day, Pretrial Ohio requested a warrant, and it was granted. The FBI then waited six days to execute the warrant by arresting Nathan at the U.S. District Courthouse in Eugene. Notably, Nathan reported to the courthouse as instructed by Pretrial Officer Cox.

## VIII. PRETRIAL COMPLIANCE & NON-COMPLIANCE ALLEGATIONS

While Nathan has been supervised by U.S. Pretrial Services, when he did not have a cell phone with internet access, there were no violations. There was, essentially, no concern from Pretrial or the U.S. District Court in Ohio.

Between May 21 and September 16, 2026, Nathan complied with strict release conditions. The pretrial release violations all involve monitored internet searches, most involving searches for images of BB guns.

The first PDF ("Report 1"), indicates Nathan did things on his phone that caused alerts on five days (9/11, 9/12, 9/13, 9/15, 9/16). Jeff Cox had an initial conversation with Nathan on 9/17. The second PDF ("Report 2") indicates

Nathan did things on his phone that caused alerts on nine days (9/27, 9/28, 9/30, 10/3, 10/8, 10/9, 10/11, 10/17, 10/19).

Pretrial in Ohio requested (and received) a warrant on October 16, 2026. Nathan was arrested at our courthouse on October 22, 2026.

The PDFs indicate that after Nathan did search for images of firearms/weapons (mostly BB guns on Amazon) after Jeff Cox told him not to on 9/17.

Notably, one cannot order a firearm online and have it shipped to one's house. Generally, one must have the firearm shipped to a Federal Firearms Licensee (FFL), who performs the identity verification and background check. Moreover, no evidence shows that Nathan was trying to purchase a firearm or other weapon. Rather, he was looking at images of guns for video games. Presumably, one can illicitly purchase a firearm on the dark web, but no evidence exists to indicate that Nathan has attempted to do so.

Pages 12-13 of Report 2 shows VOIP flagged. But those pages clearly tie the VOIP searches to "Indeed" job postings, which require a user account. Nathan's question was whether an Indeed account can be created with a VOIP since he was out of data on his cell phone's limited data plan.

Despite the serious nature of the alleged "swatting" offenses, it was decided that Nathan would be given a cellphone since everyone apparently needs a cellphone to get a job these days. That fatal flaw in the original release

conditions lead to Nathan's self-destructive demise. That flaw, however, is easily remedied in this case.

## IX. INTERNET BAN AND PRETRIAL RELEASE TO RESTWELL WILL REASONABLY ASSURE COMMUNITY SAFETY IN SHORT- AND LONG-TERM BETTER THAN JAIL

Unlike CP cases we see where the government argues that the defendant can obtain a secret internet device and not report it to pretrial, that is not an option for Nathan at Restwell. First, he has no money. Second, he'd be living in the countryside with no transportation. Third, staff members are always present at the small group home.

## X. REOPENING THE RELEASE HEARING

Reopening the release hearing is appropriate under 18 U.S.C. § 3142(f) because the defense is presenting the Court with information it either did not have or ineffectively failed to present at the pretrial release violation hearing.

The Bail Reform Act (BRA) asks this Court to determine "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b). If a judicial officer determines that release on personal recognizance under § 3142(b) won't "reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall [still] order the pretrial release of the

person" but under § 3142(c), subject to the conditions outlined in § 3142(c)(1)(A)-(B). While those conditions should be "the least restrictive further condition, or combination of conditions, that [this Court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community," § 3142(c)(1)(B), the Court "may at any time amend the order to impose additional or different conditions of release." § 3142(c)(3). (Monthly CAPS conferences could be scheduled to gauge progress and avoid possible problems.)

## XI. THE FOLLOWING FACTORS DEMONSTRATE THAT CONDITIONS EXIST WITH A RESTWELL PLACEMENT TO REASONABLY ASSURE SAFETY

Nathan is 18. He's addicted to the internet. He has never had a healthy home life and was previously in juvenile detention. He has a very traumatic upbringing as well as being witness to violent acts, including homicide.

His current placement at Restwell is the first time in his life that he's had consistent, healthy, prosocial guidance, and supervision. He's in a home with four other at-risk youth. At Restwell, he receives weekly rehabilitative mental health counseling, peer support, and skill building to assist with job placement. His counseling could be increased to twice per week to focus on addressing his internet addiction.

The goal at Restwell is to assist Nathan with becoming a functional and successful member of society. The staff and administration at Restwell are committed to achieving that goal.

## XII. RETURN TO LIVE GROW SHARE (LGS) AND RESTWELL

Nathan could live at Restwell until he is twenty-four. LGS has other housing he could move to when he ages-out of Restwell.

The most powerful evidence that there is a combination of conditions that ensure the safety of the community is the first four months Nathan was on supervision.

## XIII. WRAP AROUND SERVICES

A. Bethany started working with Nathan one to two months before PTRV arrest. Bethany and Nathan meet once per week. Bethany is there at Restwell two days per week. All LGS folks agreed that Bethany meeting with Nathan twice weekly that is a good idea and will happen.

B. FPD staff commit to seeing Nathan one to two days each week, to do something positive with him. FPD has also assigned one of our MSW Interns to this case.

1. Nathan can stay at Restwell until he is 24. It is a great place for him. They will welcome him back. LGS reports that Nathan "is caring and kind, including to the animals." "Nathan is the person

who does most for the animals." In addition to the cats, the animals include two rescue horses and five chickens.

C. Possible resource/treatment to explore: Eugene Center for Family Development for co-occurring group therapy.

D. Nathan won't be rehabilitated in jail, but he will make great progress toward rehabilitation at Restwell. He was doing great until he got the cell phone on September 7.

E. The home is in a rural, country area in Oregon, out toward Crow, on a 5-acre lot surrounded by properties that are on 5-50 acre lots. Nathan cannot leave unaccompanied. At Restwell, he helps care for rescue cats, horses, and chickens. Nathan has built a relationship of mutual trust with the rescue horses and caring for the animals is therapeutic for him. Staff report that Nathan benefits from this care and displays no signs of violence.

F. Staff take residents on supervised, pro-social outings. Notably, there was a pause in those outings during the time that Nathan was injured from MMA practice and thus had too much time on his hands. Nathan is under 24-hour supervision.

## XIV. NATHAN HAD BEEN THRIVING AT RESTWELL

1. He does what he's asked, and he has a positive attitude.
2. He shows no signs of violence.

3. He is a valued and model house member.
4. He is making great progress toward recovery and planning for his future.
5. His ability to get a job has been thwarted because he can only get a ride to work between 8 & 4 when two staff members are available at the house since at least one staff member must be at the house 24/7 and the nearest bus stop is more than five miles from Restwell. Despite this challenge, Nathan continues to search for employment opportunities.
6. Nathan thrived at the group home in June, July, August, and September until 9/16.
7. Nathan was regulating his eighteen-year-old-male emotions by punching a bale of hay that staff set up at the home and by exercising and going to the gym for MMA training.
8. Until his shoulder injury, participating in MMA training helped channel Nathan's energy and lower his stress through empowering physical assertion.

## XV. WHAT IS THE SOLUTION?

1. No access to devices that access the internet.
2. No cell phone access without further order of the Court.

3. No internet access except for employment purposes and only under direct supervision of a defense team member, a Live-Grow-Share staff member, or U.S. Pretrial.
4. Do not play violent video games that have explosions or shooting or violence.
5. His coveted bedspace at Restwell is waiting for him. He is very welcome back.
6. CAPs conferences: given the motion to dismiss for lack of venue in Ohio, jurisdiction may end up being in Oregon. This Court could schedule CAPS conferences to monitor Nathan's progress and compliance.

2. The alleged violations at issue here (i.e., internet searches that are mostly tied to video game mods) do not threaten the safety of the community.
3. While Nathan's monitored search history is concerning to some, especially once a school shooting took place, the BRA determination requires an individualized determination as to Nathan.
4. Modifying Nathan's conditions of release to prohibit the use of the internet except when under the direct supervision of a person approved by Pretrial ensures the safety of the community. Nathan's alleged

violations here do not constitute criminal activity; they are the actions of teenager searching on the internet.

A "no-internet" modification, in and of itself, is sufficient to reasonably ensure community safety. However, the court can also add location monitoring to assuage concerns about not knowing where Nathan is, though no one has indicated that is a concern. Nathan is not alleged to have gone places he should not have gone, or to have gone places outside of curfew hours.

RESPECTFULLY SUBMITTED November 4, 2026.

*s/Kurt David Hermansen*
Attorney for Defendant